*E-FILED ON 3/31/06*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VICKIE R. MEZA,<br><br>          Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>          Defendant.<br>_____/ | Case No.C05-00412 HRL<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 11, 13]** |

In this Social Security action, plaintiff Vicki Meza ("plaintiff") appeals a final decision by the Commissioner ("defendant") who denied her application for disability insurance benefits. Presently before this court is plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff filed a reply brief, and the matter was submitted without oral argument. Upon consideration of the papers submitted by the parties, and for the reasons set forth below, plaintiff's motion for summary judgment is granted in part and denied in part, defendant's cross-motion for summary judgment is granted in part and denied in part, and the case is remanded for reconsideration consistent with this opinion.

---

[1]      Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

## I.  BACKGROUND

Plaintiff is 48 years old.  In August 1996, she was involved in a hit-and-run motor vehicle accident.  She previously worked for twenty years as a "bad address" clerk at United Parcel Service.  (AR 18, 19).  On October 1, 2002, she filed an application for disability insurance benefits, claiming disability since October 6, 1999 due to fibromyalgia, mental pain, right shoulder pain, right knee pain, right foot pain, and back pain.[2]  (AR 58-61, 66, 105).  The application was denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 43-46, 51-56).  The hearing was conducted on March 10, 2004.  In a decision dated August 20, 2004, the ALJ concluded that plaintiff was not disabled under the Social Security Act.  He found that plaintiff suffered from acromioclavicular hypertrophy of a right shoulder, spondylolysis and spondylolisthesis of L5-S1, fibromyalgia, and a dysthymic disorder, and that these were "severe" impairments under 20 C.F.R. § 404.1520(c).  However, he concluded that she did not have an impairment listed in or medically equal to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  The ALJ further found that plaintiff has the residual functional capacity ("RFC") to perform a significant range of light work, and that her impairments did not prevent her from performing a number of existing jobs in the local and national economy.  (AR 17-30).  On December 3, 2004, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  Plaintiff now seeks judicial review of that decision.

## II.  LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial

---

[2] Plaintiff previously filed an application for disability benefits on August 14, 1997, which was denied initially, upon reconsideration and by an administrative law judge in a decision dated October 5, 1999.  Plaintiff's request for a rehearing as to that decision was denied, and the decision became the final decision of the Commissioner.  (AR 17).  The instant motions concern only plaintiff's October 1, 2002 application for benefits.

2

1 evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant
2 evidence that a reasonable mind might accept as adequate to support the conclusion."
3 *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).
4 When determining whether substantial evidence exists to support the Commissioner's decision,
5 the court examines the administrative record as a whole, considering adverse as well as
6 supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th
7 Cir. 1989). Where evidence exists to support more than one rational interpretation, the court
8 must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at
9 1258.

### III.  DISCUSSION

Plaintiff argues that the ALJ erred by (1) discounting the opinions of her treating physicians; (2) discrediting her subjective complaints; and (3) failing to pose a complete and accurate hypothetical to the vocational expert. Defendant asserts that the ALJ's decision is supported by substantial evidence in the record and free of legal error.

**A.     Treating Physicians' Opinions**

Plaintiff argues that the ALJ erred in concluding that she retains the RFC to perform a significant range of light work because he improperly discounted the opinions of her treating physicians, Drs. David Anzaldua and Howard Press. Both doctors concluded that plaintiff is totally disabled from the workforce. Dr. Calvin Pon, an examining physician, did not so find.

Plaintiff concedes that Dr. Anzaldua's opinion that she is totally disabled is conclusory, and therefore insufficient, to establish a finding of disability. Nevertheless, she maintains that the ALJ failed to provide legally sufficient reasons for giving Dr. Press' opinion little weight. Here, she contends that the ALJ impermissibly required objective evidence of her fibromyalgia, improperly isolated the record, and failed to provide specific and legitimate reasons for discounting Dr. Press' opinion.

The opinion of a treating physician is given deference. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Id.* An ALJ is

3

1  free to reject a treating physician's opinion, even if it is not contradicted.  "To reject the
2  uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing
3  reasons for doing so."  *Id*.  Where the treating physician's opinion is controverted, "the ALJ
4  may reject the opinion of a treating physician in favor of a conflicting opinion of an examining
5  physician if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that
6  are based on substantial evidence in the record.'"  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th
7  Cir. 2002) (citing *Magallanes*, 881 F.2d at 751).  "The ALJ can 'meet this burden by setting out
8  a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
9  interpretation thereof, and making findings."  *Id*.  "The ALJ need not accept the opinion of any
10 physician, including a treating physician, if that opinion is brief, conclusory, and inadequately
11 supported by clinical findings."  *Id*. (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.
12 1992)).

13 In this case, Dr. Press diagnosed plaintiff with cervical disc herniation, post-traumatic
14 fibromyalgia and insomnia and concluded that plaintiff is totally disabled from the workforce.
15 (AR 22-23, 161-62).  After discussing the findings and conclusions of Dr. Press (and his
16 associate, Dr. Anzaldua), the ALJ determined that their opinions were entitled to little
17 evidentiary weight because he found that (1) the opinions were based primarily, if not
18 exclusively, upon plaintiff's subjective complaints (which he found to be not entirely credible);
19 (2) Dr. Press' October 30, 2003 opinion was little more than check-marked boxes with no
20 explanation for the limits imposed; and (3) Dr. Press' limitations were so inconsistent with
21 other medical evidence in the record that it appeared that Dr. Press was acting as an advocate
22 rather than a physician.  (AR 20, 22-26).

23 Plaintiff argues that in rejecting Dr. Press' opinion, the ALJ impermissibly required
24 objective evidence of her fibromyalgia.  *See Benecke v. Barnhart*, 397 F.3d 587, 594 (9th Cir.
25 2004) (concluding that the ALJ erred "by 'effectively requir[ing] 'objective' evidence for a
26 disease that eludes such measurement.'") (quoting *Green-Younger v. Barnhart*, 335 F.3d 99,
27 108 (2d Cir. 2003).  In the instant case, the ALJ noted that Drs. Anzaldua and Press are general
28 practitioners whereas "[t]he diagnosis of fibromyalgia syndrome is one of exclusion , and

4

generally made by a rheumatologist." (AR 26). Nevertheless, unlike in *Benecke*, the ALJ accepted the diagnosis of fibromyalgia, but found only that Dr. Press' opinion lacked objective support as to his analysis of plaintiff's functional limitations. (*See* AR 25-26).

Whether or not Dr. Press was acting as an "advocate," the court concludes that the ALJ provided specific, legitimate reasons for rejecting his opinion of total disability that are based on substantial evidence in the record. An ALJ properly may reject an opinion which consists of checked-off boxes without any explanation of the bases for the conclusions. *See, e.g., Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that the ALJ permissibly discounted a treating physician opinion in the form of a checklist without supportive objective evidence); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (same). Here, the ALJ found that Dr. Press' October 30, 2003 check-box responses on the Fibromyalgia Residual Functional Capacity Questionnaire did not contain any explanation for the opinions expressed and that Dr. Press' one-paragraph addendum only summarized plaintiff's self-reported history and subjective complaints. (AR 25, 185-191).

Plaintiff contends that the ALJ impermissibly isolated the record in rejecting Dr. Press' October 30, 2003 opinion. However, the ALJ did consider and discuss Dr. Press' treatment notes (as well as those of Dr. Anzaldua), but nonetheless concluded that they were entitled to little weight because they were based primarily, if not exclusively, upon plaintiff's subjective complaints which he found to be not entirely reliable. (AR 20, 22-25). As discussed more fully below, the court concludes that the ALJ properly discounted plaintiff's credibility as to her subjective complaints. Additionally, in discussing Dr. Press' April 24, 2003 report, the ALJ noted that Dr. Press did not have plaintiff's medical records. (AR 23). He further found that Dr. Press' opinion that plaintiff would only be able to use her hands for less than one percent of an eight-hour workday was inconsistent with plaintiff's testimony as to her daily activities which included taking care of her pets, doing her own housework, preparing her own meals and living independently. (AR 25, 91-95, 231-32). Because Dr. Press did not see plaintiff before 2003, the ALJ also permissibly questioned the credibility of his opinion that plaintiff's limitations existed since 1996. (AR 26). *See Magallanes*, 881 F.2d at 754 (finding that a

5

treating physician, who had no personal knowledge of the claimant's condition before he began treatment, was "scarcely different from any non-treating physician with respect to that time period.").

Dr. Pon's opinion does provide support for the ALJ's rejection of Dr. Press' opinion of total disability.  As noted by the ALJ, Dr. Pon reviewed plaintiff's medical record before examining her.  (AR 21, 142).  After conducting a physical examination of plaintiff, he stated diagnostic impressions for chronic neck pain, right shoulder pain, chronic low back pain secondary to spondylolysis and spondylolisthesis of L5-S1, chronic right knee pain localized at the anterior aspect along the medial joint line representing possible chondromalacia of the patella, and right heel pain possibly from heel spurs.  (AR 22, 145).  In Dr. Pon's view, plaintiff retained the functional capacity to, among other things, sit for six hours during an eight-hour workday; occasionally stoop, crouch, kneel, squat, crawl and climb ladders; frequently lift up to ten pounds; occasionally lift between ten and twenty pounds; engage in limited reaching with the right shoulder occasionally; drive and take public transportation.  (AR 22, 145-46).  Dr. Pon also found that plaintiff may have some limitation in right and left-foot controls, but has no limitation in her ability to perform gross or fine manipulative tasks bilaterally.  (AR 22, 145-46).

Plaintiff argues that Dr. Pon's opinion cannot be considered substantial evidence which supports the ALJ's rejection of Dr. Press' opinion because his findings are not substantially different from those of her treating physicians, and Dr. Pon's contrary opinion as to plaintiff's RFC is not substantial evidence.  However, the cases cited by plaintiff state the principle that "[t]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining *or* treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996); *see also Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician"); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (the report of a non-treating, non-examining physician combined with the

6

1  ALJ's own observations of the claimant's demeanor did not constitute substantial evidence
2  supporting the ALJ's rejection of the examining physicians' opinions that the claimant was
3  disabled). Here, Dr. Pon is a consultative examining physician who conducted his own tests on
4  plaintiff. *See Tonapeytan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the
5  "[examining physician's opinion] alone constitutes substantial evidence, because it rests on his
6  own independent examination of [the claimant]."). In any event, as noted above, the ALJ did
7  not reject Dr. Press' opinion based solely upon the opinion of Dr. Pon, but also relied upon
8  plaintiff's reported daily activities.

9  Based upon a review of the record as a whole, the court finds that the ALJ did not err in
10 giving little weight to the opinions of plaintiff's treating physicians. Accordingly, plaintiff's
11 motion as to this issue is denied and defendant's motion as to this issue is granted.

12 **B.    Plaintiff's Subjective Claims**

13 Plaintiff challenges the ALJ's determination that her subjective claims were not entirely
14 credible. She argues that he failed to sufficiently specify which allegations of pain or other
15 symptoms he found unreliable and failed to substantiate his rejection of her allegations.
16 Additionally, she contends that the ALJ erroneously required objective evidence as to the
17 degree and severity of her pain, despite the fact that she suffers from fibromyalgia, a disease
18 which she argues is not susceptible to such proof.

19 "[O]nce the claimant produces objective medical evidence of an underlying impairment,
20 an adjudicator may not reject a claimant's subjective complaints based solely on a lack of
21 objective medical evidence to fully corroborate the alleged severity of the pain." *Bunnell v.*
22 *Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citing *Cotton v. Bowen*, 799 F.2d 1403,
23 1407 (9th Cir. 1986)). If the adjudicator finds that the claimant's allegations are not credible,
24 he "must specifically make findings which support this conclusion." *Id*. "These findings,
25 properly supported by the record, must be sufficiently specific to allow a reviewing court to
26 conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not
27 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id*. at 345-46 (quoting *Elam v.*
28 *Railroad Retirement Bd*., 921 F.2d 1210, 1215 (11 Cir. 1991)). If the claimant produces

1  evidence of an impairment which could reasonably be expected to produce some degree of
2  symptom, and there is no evidence that the claimant is malingering, "the ALJ can reject the
3  claimant's testimony about the severity of her symptoms only by offering specific, clear and
4  convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  If a
5  credibility finding is supported by substantial evidence in the record, the court may not engage
6  in second guessing.  *Thomas*, 278 F.3d at 959.

7  There apparently is no dispute that plaintiff has produced evidence of impairments (e.g.,
8  fibromyalgia) which reasonably could be expected to produce some degree of symptoms and
9  that there is no indication of malingering.  The only issue is whether the ALJ erroneously
10  discredited her testimony as to the severity of those symptoms.

11  Plaintiff argues that the ALJ failed to sufficiently identify the allegations he found
12  unreliable, citing Social Security Ruling 96-7p.  That ruling provides, in relevant part:

> It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

19  SSR 96-7p at 160.

20  Here, the ALJ discussed, in the body of his decision, plaintiff's subjective complaints,
21  including those she testified about at the hearing and those she communicated to her physicians.
22  (AR 19-24).  He credited her allegations "to the limited extent that they impose the necessity of
23  a 'sit stand option,' where the claimant must be free to alternatively sit or stand approximately
24  every 15 minutes."  (AR 25).  He otherwise found that her symptom allegations were not
25  entirely credible, particularly the allegations of excruciating and disabling pain.  (AR 26-27).
26  The court is satisfied that the ALJ sufficiently identified the allegations he found not credible.

27  Nonetheless, plaintiff contends that the ALJ failed to provide specific, clear and
28  convincing reasons for discrediting her subjective complaints.  In determining the credibility of

8

an individual's statements, an ALJ may consider whether the claimant engages in daily activities involving skills that could be transferred to the workplace, unexplained or inadequately explained failures to seek treatment or to follow a prescribed course of treatment, as well as ordinary techniques for credibility evaluation. *Bunnell*, 947 F2d at 346 (citing *Fair v. Bowen*, 885 F.2d 597, 603, 604 n.5 (9th Cir. 1989)). Social Security Ruling 96-7p provides that in addition to the objective medical evidence, an ALJ must consider other factors including:

- the individual's daily activities;
- the location, duration, frequency, and intensity of the individual's pain or other symptoms;
- factors that precipitate and aggravate the symptoms;
- the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
- treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
- any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
- any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p at 160. The ALJ may also consider his own observations of the claimant. *Id*. at 163.

In this case, the ALJ appears to have discredited plaintiff's allegations, at least in part, upon a lack of objective proof as to the degree or severity of her alleged pain and other symptoms. For example, he found plaintiff's allegations unreliable because of (1) the "refusal of the claimant's examining physicians to corroborate the degree of limitation or disabling pain alleged"; and (2) "the absence of clinical signs and laboratory findings in the case record indicating the presence of disabling pain." (AR 26). However, the Ninth Circuit has observed that fibromyalgia is a disease that eludes objective proof. *Benecke*, 379 F.3d at 594. The ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by the objective medical evidence." *Bunnell*, 947 F.2d at 346-47.

1    Nevertheless, the ALJ stated other sufficient, specific reasons which are supported by
2 the record for discrediting plaintiff's subjective complaints. In his decision, he noted that
3 plaintiff had worked for twenty years at United Parcel Service prior to her 1996 accident. (AR
4 24). Although he noted that plaintiff stated that certain medications caused unwanted side
5 effects, he found that her failure to take prescription medications and the lack of medical
6 treatment over a 2 1/2-year period to be inconsistent with plaintiff's allegations of disabling and
7 excrutiating pain. (AR 24, 26). He noted that while plaintiff received chiropractic treatment
8 after her 1996 accident, she did not seek medical treatment until 2000, took no prescription
9 medication until that time, and did not receive treatment from a medical doctor again until 2003.
10 (AR 24, 26, 223-27). Although plaintiff explained that she lacked financial resources to seek
11 medical treatment, the ALJ noted that she admitted that she received a $50,000 inheritance in
12 2000 when she began to seek medical treatment for her symptoms. (AR 24, 26, 222). He also
13 found the alleged severity of plaintiff's symptoms to be inconsistent with her daily activities
14 during the alleged period of disabling pain, e.g., teaching dog training classes from 1997
15 through May 2003, preparing her own meals, caring for her pets and living independently. (AR
16 24, 26, 71, 208-12, 231-32). The ALJ also found plaintiff's allegations to be inconsistent with
17 his own observation that during the hearing, she "demonstrated sufficient ability to sit without
18 discomfort . . .." (AR 26).

19    Plaintiff argues that the ALJ unreasonably assumed that the inheritance money was
20 available for more treatment and should have asked her why she did not use it for that purpose.
21 However, plaintiff did testify at the hearing that she also lived on that money. (AR 222). It
22 may be that a reasonable mind could reach a different conclusion as to the credibility of
23 plaintiff's subjective complaints. Nevertheless, viewing the record as a whole, the court finds
24 that the ALJ's conclusion is a reasonable one which is supported by substantial evidence.
25 Accordingly, plaintiff's motion as to this issue is denied, and defendant's motion as to this issue
26 is granted.

10

### C. Sufficiency of the Hypothetical Posed to the Vocational Expert

Plaintiff contends that the ALJ failed to pose a complete and accurate hypothetical to the vocational expert ("VE"). "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Where a VE is used, "[h]ypothetical questions posed to the vocational expert must set out *all* of the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." *Id.*; *see also Magallanes*, 881 F.2d at 756.

In the instant case, the ALJ stated his findings as to plaintiff's residual functional capacity ("RFC") as follows:

> The undersigned finds that the claimant is limited to standing and/or walking a total of 6 hours total in an eight-hour workday and limited to sitting no more than 6 hours total [in] an eight-hour workday. The claimant is able to lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. The claimant is limited to stooping, crouching, kneeling, squatting, crawling, climbing ladders and reaching above shoulder level with her right arm only occasionally. The undersigned finds the claimant is capable of learning, remembering, and performing tasks of simple to moderate complexity. The claimant has moderate limitation on her ability to maintain concentration, persistence, and pace; and that this means that she can only perform simple repetitive tasks and tasks to [sic] do not require a rapid pace. Finally, the undersigned will credit the claimant's subjective complaints to the limited extent that they impose the necessity of a 'sit stand option,' where the claimant must be free to alternatively sit or stand approximately every 15 minutes.

(AR 24-25).

Plaintiff asserts that none of the hypothetical questions to the VE include all of the limitations expressly found by the ALJ. Specifically, she contends that none of the hypotheticals included the ALJ's findings on postural limitations, limitations in reaching overhead with the right arm, or the limitation to simple and repetitive tasks that do not require a rapid pace and the ability to sit and stand approximately every 15 minutes. Indeed, defendant does not dispute that the ALJ did not expressly include these limitations in the questions he posed to the VE, but nonetheless argues that some of the limitations are essentially encompassed by the hypotheticals that the ALJ presented:

11

- "optional type work, limited to light work activity but corresponding with that the ability to sit and stand optionally as the circumstances allow" (AR 247);
- "and this is the ability to sit, stand, and change position as it might be and lifting no more than the 10 or 20 pounds" (AR 248);
- "could perform work on a sustained work [sic] with some moderate problem in concentration" (AR 248); and
- "persistence and pace. It has to change. I mean, back off, be a little bit moderate on that." (AR 248).

As for the omission of the ALJ's findings on postural limitations, defendant contends that it is irrelevant. Here, defendant argues that the Dictionary of Occupational Titles ("DOT") indicates that those limitations would have no impact upon plaintiff's ability to perform the jobs identified by the VE. Defendant therefore urges this court to find that the ALJ "appropriately inferred from the evidence that nothing in the Plaintiff's RFC would preclude her from performing either the cashier or parking lot attendant jobs." (Mot. at 9:18-20). While an ALJ is permitted to draw reasonable inferences from the evidence (*see Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)), the ALJ did not cite to any specific job in the DOT. The court is disinclined to make the leap advocated by defendant.

Because the hypotheticals posed by the ALJ did not reflect all of his findings as to plaintiff's limitations, the VE's opinion has no value and cannot support the ALJ's decision. Accordingly, remand is required. *See Embrey*, 849 F.2d at 423.

### IV. ORDER

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

2. Defendant's cross-motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

3. The matter is REMANDED for further proceedings consistent with this opinion; and

4. The Clerk of the Court shall close the file.

Dated: March 31, 2006

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:05-cv-00412 Notice will be electronically mailed to:

Angelina Valle     angelina@valle-law.com

Marc V. Kalagian     marckalagian_rohlfinglaw@hotmail.com

Sarah Lynn Ryan     sarah.ryan@ssa.gov

Sara Winslow     sara.winslow@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.